FILED
CLERK

5/20/2022 12:28 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
...............................................................X

                                                    **MEMORANDUM AND**
                                                    **ORDER**

In re Maura E. Lynch Bankruptcy Appeals          19-cv-3837(GRB)
                                                    19-cv-3838(GRB)
                                                    19-cv-5673(GRB)
                                                    19-cv-5685(GRB)
                                                    19-cv-5687(GRB)

...............................................................X

**GARY R. BROWN, United States District Judge**:

Appellant Maura E. Lynch, proceeding *pro se*, appeals from five orders issued by Chief Judge Alan S. Trust of the Bankruptcy Court for the Eastern District of New York. For the reasons set forth below, three of the appeals are denied for lack of subject matter jurisdiction, and the remaining two appeals are substantively denied and the orders of the Bankruptcy Court are affirmed.

*Facts*

In 2010, Lynch's former husband Stephen Vaccaro, appellee, commenced a divorce action in the Supreme Court of the State of New York, County of Suffolk. Bankr. Ct. Docket Entry ("DE") 870, No. 8-15-74795-ast, Aff. of Stephen Vaccaro ("Aff."), ¶ 4. In 2012, the matrimonial court equitably distributed the marital assets, including 7 East Gate Drive, Wainscott, New York, which was awarded to Lynch, and 24 Ninevah Place, Sag Harbor, New York ("Ninevah" or the "Sag Harbor property"), which is the piece of real estate at issue in this appeal. *Id.* ¶¶ 5, 17; Mar. 15, 2013, Amended Trial Order, DE 870-1. In 2013, the state court entered a Judgment of Divorce. Aff. ¶ 6; Amended Judgment of Divorce, Dec. 23, 2013, DE 870-2. On November 26, 2013, Lynch

1

was found to be in contempt of court for, *inter alia*, failing to purchase Vaccaro's share of the Sag Harbor property and her failure to pay Vaccaro half the rental proceeds. Aff. ¶ 32; *see* DE 870-4, Nov. 26, 2013 Contempt Order. As Lynch did not purchase Vaccaro's share of the Sag Harbor property, the contempt order provided that the appellant was to be excluded from the Sag Harbor property. Aff. ¶ 36. Nonetheless, in or about August 2014, Lynch broke into the Sag Harbor property, changed the locks, and broke in a second time after Vaccaro had the locks changed back. *Id.* ¶ 45. In April 2015, the state court held Lynch in contempt of court once again, finding that "[Lynch] has not vacated the property located at 24 Ninevah Place, Sag Harbor as directed and thus, disobeyed 'a lawful judicial order expressing an unequivocal mandate' of which she had knowledge." *Id.* ¶ 47; Apr. 1, 2015, Contempt Order, DE 870-5 at 5.

In November 2015, Lynch filed a petition for Chapter 11 bankruptcy in which she claimed a homestead exemption for the Sag Harbor property. DE 1, 8-15-74795-ast; DE 19 at 11. In June 2017, Lynch's bankruptcy was converted to a Chapter 7 proceeding. DE 457. On April 9, 2019, Lynch filed another Chapter 11 bankruptcy petition. Bankr. Ct. DE 1, 8-19-72595-ast. At a hearing held two days later, Chief Judge Trust inquired as to how the new Chapter 11 filing would affect Lynch's Chapter 7 proceeding:

> THE COURT: So, as far as the Chapter 11 estate is concerned, the stay does not apply to the continued administration of the Chapter 7 estate?
>
> MR. WEINSTEIN: That's correct. . . .
>
> …
>
> THE COURT: All right. So, the Chapter 11 estate was not seeking to stay the proceedings today in the Chapter 7 case?
>
> MR. WEINSTEIN: That is correct, Judge.

DE 923, 8-15-74795-ast, Tr. dated April 11, 2019 at 11.

On May 21, 2019, the Bankruptcy Court held a "ruling conference" on the motion to approve a Rule 9019 settlement and the homestead objection.  DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 10.  The material terms of the settlement were as follows:

> Vaccaro will receive 50 percent of the net sale proceeds from the sale of [Sag] Harbor, after payment of a disputed mortgage listed in the Debtor's schedules in favor of Citi mortgage in the amount of $304,000.  Following the approval of the settlement, the Trustee is to file a claim objection.  Vaccaro will also receive 50 percent of the remaining proceeds of the sale of Ninevah, after deducting for a mortgage in the amount of $50,000 in favor of Shelton. mortgage.  A claim objection will also be filed.

> Vaccaro will receive 50 percent of funds denominated as remaining funds of approximately $150,000, which were generated substantially or entirely from the rental of the Estate's properties after the petition date.  Additionally, as part of the settlement, if Vaccaro prevails on the objection to the Debtor's homestead, 70 [percent] of the funds otherwise which would have been allocated to the homestead will go to Vaccaro and the remaining 30 percent will remain with the Estate.

> If the settlement is approved, the funds available to the Estate to conclude administration of the Estate and pay claims in the order of statutory priority will fall in the range of between $275,000 on the low end, and $535,000 on the high end.  The distribution to Vaccaro will fall within the range of $275,000 on the low end, and $595,000 on the high end.  Each of these scenarios depend upon the resolution of the homestead objection claim and the as yet unobjected-to Citi mortgage and Shelton mortgage claims.

> Stipulation also provides for mutual releases between the Trustee and Vaccaro of claims against each other, thus resolving any and all litigation as between the Trustee and Vaccaro.  The release does not include a release of any claims the Debtor may have against Vaccaro, which were abandoned to the Debtor; any claims Vaccaro may have against the abandoned properties; or any claims concerning a contempt proceeding, which was pending at the time of the original bankruptcy filing.

*Id*. at 29-31.

After considering all the relevant factors for settlement approval set forth in *In re Iridium Operating LLC*, 478 F.3d 452, 461–62 (2d Cir. 2007), the Bankruptcy Court approved the Rule 9019 settlement.  DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 46.  Because Lynch had no colorable right or claim to occupy the Sag Harbor property as of the date of her bankruptcy petition,

the Bankruptcy Court denied the homestead exemption.  *Id.* at 52-56.  On June 13, 2019, the Bankruptcy Court issued two Orders approving the Rule 9019 settlement and denying the homestead exemption for Ninevah for the reasons stated on the record at the ruling conference. DE 921-22.  These appeals follow.

*Standard of Review*

As this Court has previously stated, a District Court's standard of review for an appeal from Bankruptcy Court is as follows:

> District Courts have appellate jurisdiction over "final judgments, orders, and decrees" of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  *See* 28 U.S.C. § 158(a)(1).  A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. Fed. R. Bank. P. 8013.  On appeal, a district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Odums, III v. Wells Fargo, N.A.*, No. CV 20-1100 (AMD), 2021 WL 918323, at *2 (E.D.N.Y. Mar. 10, 2021) ("On appeal, a district court reviews the legal conclusions of a bankruptcy court "de novo, and its factual findings for clear error.").
>
> "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *District Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (internal quotation marks and citations omitted).  The clearly erroneous standard requires "strong deference" to "findings of fact based on credibility assessments of witnesses [the court] has heard testify."  *In re Pisculli*, 426 B.R. 52, 59 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).  Moreover, "[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction [and] resolve the ambiguities differently."  (*Id.* at 68 (alterations in original).

*In re Mader*, No. CV 19-2048 (GRB), 2021 WL 1729472, at *4 (E.D.N.Y. Mar. 31, 2021).

In addition, "[a] bankruptcy court's decision to approve a settlement is reviewed extremely deferentially."  *In re Schneider*, No. 14-CV-1166 (JMA), 2015 WL 1412364, at *3 (E.D.N.Y. Mar. 26, 2015) (quoting *In re Cousins*, No. 09–CV–1190, 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22,

2010)).  When approving a settlement under Bankruptcy Rule 9019, "a bankruptcy judge need not decide the numerous questions of law and fact raised by the settlement, but rather, should 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'"  *Bildirici v. Kittay (In re E. 44th Realty, LLC)*, Nos. 05 BR. 16167 (RDD), 07 Civ. 8799 (CM), 2008 WL 217103, at *8 (S.D.N.Y. Jan. 23, 2008) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)).  "[A] reviewing court will not overturn a bankruptcy court's decision to approve a settlement unless it is manifestly erroneous and a clear abuse of discretion."  *In re Schneider*, 2015 WL 1412364, at *3 (citations and internal quotation marks omitted); *see also In re Refco Inc.*, 505 F.3d 109, 116 (2d Cir. 2007).  Of course, "[a] bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings."  *In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998).

Generally, a court is obligated to afford a "special solicitude" to *pro se* litigants, which "most often consists of liberal construction of pleadings, motion papers, and appellate briefs . . . relaxation of the limitations on the amendment of pleadings . . . and deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him[.]"  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted).  However, "the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants."  *Id.* at 102.  Accordingly, the degree of solicitude granted by the Court may be lessened in cases involving an experienced *pro se* litigant such as Lynch who is familiar with the procedural setting.  *See In re Lynch*, No. 19-2965, 2022 WL 16467, at *2 (2d Cir. Jan. 3, 2022) ("The district court was permitted to give Lynch less deference than most *pro se* litigants because of her extensive litigation history.").

*Subject Matter Jurisdiction*

Generally, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."  Fed. R. Bankr. P. 8002(a)(1); *see also* 28

5

U.S.C. § 158(c)(2).  "[T]he time limit contained in Rule 8002(a) is jurisdictional, and . . . in the absence of a timely notice of appeal in the district court, the district court is without jurisdiction to consider the appeal, regardless of whether the appellant can demonstrate 'excusable neglect.'"  *In re Coudert Bros. LLP*, 673 F.3d 180, 185 (2d Cir. 2012) (quoting *Siemon v. Emigrant Sav. Bank (In re Siemon)*, 421 F.3d 167, 169 (2d Cir. 2005)); *see also In re Lynch*, No. 21-1522-BK, 2022 WL 894715, at *1 (2d Cir. Mar. 28, 2022) (ordering dismissal of Lynch's bankruptcy appeal for lack of subject matter jurisdiction where the appeal was untimely).

Three of Lynch's appeals were filed more than 14 days after the bankruptcy order being appealed:

- The Order Denying In rem Relief from the Automatic Stay as to property located at 90 Alton Road, 2211, Miami Beach FL 33139, *see* DE 74, 8-19-72595-ast, was entered September 20, 2019, and the notice of appeal was entered 17 days later on October 7, 2019, *see* DE 83.

- The Order Granting Motion to Withdraw as Attorney to the Debtor, *see* DE 72, 8-19-72595-ast, was entered September 12, 2019, and the notice of appeal was entered 25 days later on October 7, 2019, *see* DE 89.

- The Order Denying Debtor's Motion to reconsider final compensation orders, *see* DE 959, 8-15-74795-ast, was entered September 20, 2019, and the notice of appeal was entered 17 days later, on October 7, 2019, *see* DE 963.

As each of Lynch's notices of appeal in the above three cases, 19-cv-5673, 19-cv-5685, and 19-cv-5687, respectively, were filed more than 14 days after the entry of the order being appealed, this Court lacks subject matter jurisdiction over said appeals.  *In re Lynch*, 2022 WL 894715, at

*1.  Accordingly, the three referenced appeals filed by Lynch, *viz.* 19-cv-5673, 19-cv-5685, and 19-cv-5687, are dismissed for lack of jurisdiction.

However, two of Lynch's appeals were timely filed:

- The Order Granting Motion to Approve Compromise under Rule 9019, Authorizing and Approving the Global Stipulation of Settlement Between the Chapter 7 Trustee and Stephen S. Vaccaro, *see* DE 922, 8-15-74795-ast, was entered June 13, 2019, and the notice of appeal was filed with the Bankruptcy Court 14 days later on June 27, 2019, *see* DE 924.

- The Order Granting Motion to Object to Debtor's Claim of Exemptions, *see* DE 921, 8-15-74795-ast, was entered June 13, 2019, and the notice of appeal was filed with the Bankruptcy Court 14 days later, on June 27, 2019, *see* DE 925.

Because both of Lynch's notices of appeal in these two cases, 19-cv-3837 and 19-cv-3838, were filed within 14 days of the order being appealed, the Court has jurisdiction to consider said appeals.

*Rule 9019 Settlement*

Lynch argues "the Bankruptcy Court erred when it entered [sic] continued a judicial proceeding against Debtor and property of the Debtor that had commenced prior to the April 9, 2019 Chapter 11 bankruptcy petition, and when it entered the 9019 Order because these were done in violation of the automatic stay imposed pursuant to Code section 362(a) and are therefore void, and should be vacated by this Court."  DE 23, 19-cv-3837, App. Br. at 1.  However, Lynch affirmatively disavowed the argument that her new bankruptcy petition stayed her earlier bankruptcy proceeding when her attorney confirmed to Chief Judge Trust that "as far as the Chapter 11 estate is concerned, the stay does not apply to the continued administration of the Chapter 7 estate."  DE 923, 8-15-74795-ast, Tr. dated April 11, 2019, at 11.  "Any arguments not

raised in the bankruptcy court are considered waived; unless such waiver results in manifest injustice, the new arguments will not be considered on appeal." *In re Markus*, 620 B.R. 31, 36 (S.D.N.Y. 2020), *appeal withdrawn*, No. 20-3727, 2021 WL 1750122 (2d Cir. Mar. 26, 2021) (citing *In re Gordon*, 577 B.R. 38, 47 (Bankr. S.D.N.Y. 2017)).  Appellants cannot "change [their] strategy on appeal." *In re Campbell*, 539 B.R. 66, 74 (Bankr. S.D.N.Y. 2015).

The matrimonial court previously distributed the marital assets and awarded Lynch the East Gate property, so there is no issue of manifest injustice.  Because the issue of the automatic stay was not raised before the Bankruptcy Court and Lynch waived this argument below, the issue is not properly before the Court on appeal.  *See In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 133 (S.D.N.Y.), *aff'd sub nom. Suncal Communities I LLC v. Lehman Com. Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010) (argument that compromise order was void because it violated the automatic stay was not properly preserved for appeal because appellants did not adequately raise the argument below).  Thus, the Court will not consider Lynch's contention that the automatic stay from her April 2019 bankruptcy filing voided the Rule 9019 settlement.[1]

---

[1] Although it is true that "[s]ince the purpose of the stay is to protect creditors as well as the debtor, the debtor may not waive the automatic stay[,]" *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986), generally a petitioner cannot simultaneously maintain two separate bankruptcy proceedings because "[t]he existence of multiple cases may indicate an exploitation of the bankruptcy process and an attempt at reimposing the automatic stay after it had been previously lifted." *In re Turner*, 207 B.R. 373, 379 (B.A.P. 2d Cir. 1997), *as amended* (Mar. 4, 1997) (finding petitioners' chapter 13 case null and void *ab initio* and subject to dismissal for cause under section 1307(c) where petitioner filed Chapter 13 petition while their Chapter 7 case was still open); *see also In re Barnes*, 231 B.R. 482, 485 (E.D.N.Y. 1999) (upholding dismissal of Chapter 13 bankruptcy as made in bad faith where "the purpose of the filing of the Chapter 13 bankruptcy was solely to impede the ongoing foreclosure proceeding by Citibank, which was being conducted in conjunction with the pending Chapter 7 proceeding"); *see also In re Lord*, 295 B.R. 16, 18 (Bankr. E.D.N.Y. 2003).  In an Order to Show Cause as to why Lynch's April 2019 bankruptcy petition should not be dismissed or converted to Chapter 7, Chief Judge Trust noted Lynch's "extensive litigious history" and "expressed concerns about Debtor's concurrently opening chapter 7 and chapter 11 cases and whether Debtor may simultaneously be a debtor in both open cases." Bankr. Ct. DE 46 at 5, 8-19-72595-ast.  After holding a hearing in August 2019, Chief Judge Trust dismissed Lynch's case on September 19, 2019.  DE 75.  Thus, it appears that on the merits the automatic stay likely would have been lifted, a decision committed to the discretion of the bankruptcy judge. *See In re Lehman Bros. Holdings Inc.*, 435 B.R. at 132 (citing *In re Sonnax Indus. Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

Lynch also asserts a laundry list of "substantive" issues with the Rule 9019 settlement, including "violation of the Bankruptcy Code priority payment scheme, the violation of 28 U.S.C. section 157(b)(2) which requires the bankruptcy court [sic] abstain from rendering final decisions on state court disputed claims . . . the Court's determination that claims the estate has against Vaccaro are not colorable . . . that the Iridium factors were not met, that the parties were deprived of discovery, the ambiguous and unclear language of the Ruling as to releases and outstanding claims, etc." DE 23, 19-cv-3837, App. Br. at 18-19. As the Second Circuit has explained, the factors to be considered when approving a Rule 9019 bankruptcy settlement are as follows:

> Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in this Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *see also* 10 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev.) (citing *TMT Trailer Ferry*). Those interrelated factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Drexel Burnham*, 960 F.2d at 292.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

In approving the Rule 9019 settlement, the Bankruptcy Court thoroughly considered all of the aforementioned *Iridium* factors. As to the balance between the litigation's possibility of success and the settlement's future benefits, the Bankruptcy Court found that this factor "heavily weighs in favor of approving the settlement" because "the Debtor's assertions of claims against Vaccaro exceeding $1 million dollars are simply not sustainable," nor "colorable." DE 919, 8-15-

74795-ast, Tr. dated May 21, 2019 at 38-40.  Regarding the likelihood of complex and protracted litigation and the paramount interests of the creditors, the Bankruptcy Court found these factors weighed heavily in favor of settlement because "[a]bsent this settlement it is highly unlikely that the litigation in this Estate would end any time in the near future."  *Id.* at 42-43.  "[L]itigation," the Bankruptcy Court noted, "has now dogged these parties for over nine years."  *Id.* at 39.  There were no other parties with an interest in the settlement.  Both the Trustee and Vaccaro were represented by competent and experienced counsel.  *Id.* at 45-46.  The Bankruptcy Court found nothing "untoward or unusual in the releases proposed in the settlement," and that the "settlement [was] clearly the product of arm's length bargaining between the Trustee and Vaccaro, and there [was] simply no evidence to the contrary."  *Id.* at 46.

With regard to the 70/30 division of funds if the homestead claim were denied, the Court questioned Vaccaro's counsel as to whether he was receiving an undue benefit.  *Id.* at 41. The Trustee testified that the parties agreed to a 70/30 division because Vaccaro incurred the expenses of making homestead objections.  *Id.* at 36.  As Vaccaro's counsel explained, "a number of the Debtor's professionals were paid from proceeds that were available to the Chapter 11 Estate, which if not dispersed, would have been available to the Chapter 7 Estate, exceeding $200,000. Those proceeds came from the same of the Harbor property."  *Id.* at 41-42.  The Bankruptcy Court in 2017 had previously entered orders for fees of $112,000 and $95,000, paid from proceeds from the Sag Harbor and East Gate properties.  *Id.* at 42.  Hence, the Bankruptcy Court did not need to rebalance the division of funds because of the funds which had already been disbursed from said properties.  *Id*.

Because the Bankruptcy Court thoughtfully applied all seven *Iridium* factors, and Lynch has identified no manifest error or clear abuse of discretion, under the "extremely deferential[]"

10

standard of review for the approval of bankruptcy settlements, *In re Schneider*, 2015 WL 1412364, at *3, the Court affirms the approval of the Rule 9019 settlement.

*Homestead Exemption*

Again, Lynch argues that the "Bankruptcy Court erred when it entered [sic] continued a judicial proceeding against the Debtor and property of the Debtor that had commenced prior to the April 9, 2019 Chapter 11 bankruptcy petition, and when it entered the Homestead Order because these were done in violation of the automatic stay imposed pursuant to Code section 362(a) and are therefore void, and should be vacated by this Court." DE 24, 19-cv-3838, App. Br. at 1. As explained *supra*, this argument was not properly preserved because Lynch waived the argument below. Thus, the Court will not consider Lynch's contentions regarding the effect of the automatic stay from her April 2019 bankruptcy filing.

Lynch also argues that her "possessory rights in the Ninevah property were never terminated by the State Court and she was in complete lawful possession and occupancy" because "[o]n April 1, 2015, when the State Court made a final determination on Vaccaro's request to have Debtor evicted, this relief was denied, and no Writ of Assistance was issued." DE 24, Pl. Br., 19-cv-3838, at 36. It is undisputed that the matrimonial court found Lynch in contempt of court for "not vacat[ing] the property located at 24 Ninevah Place, Sag Harbor . . . ." Bankr. Ct. DE 870-5 at 5, 8-15-74795-ast, Apr. 1, 2015, Contempt Order. Based on the state court record and Vaccaro's testimony, the Bankruptcy Court found:

> The State Court's May 3, 2013 order granted Vaccaro's request to exclude Debtor from Ninevah if she failed to pay Vaccaro for his interest by July 31, 2013, which she did not do. Thus, the State Court ordered the Suffolk County Sheriff to assist the Plaintiff there, Vaccaro, in the exclusion of the Defendant, there the Debtor, from Ninevah.
>
> Vaccaro, as indicated, testified that in August of 2014, the Debtor broke into Ninevah and changed the locks. Vaccaro had the locks changed, and the Debtor broke back in a second time. The April 1, 2015 order of the State Court found the

>Debtor in contempt of its November 26, 2013 order, and provided that the Debtor has not vacated the Ninevah property, and thus has disobeyed a lawful judicial order expressing unequivocal mandate.
>
>…
>
>So, while there is no question that the Debtor was actually physically occupying Ninevah at the time of the bankruptcy petition, that occupancy was not under claim of right, but was in fact, determined by the State Court to be unlawful, as in violation of various orders of the State Court that clearly excluded the Debtor from occupying the Ninevah property.

DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 52-54.

Upon review of the record, the Court affirms the Bankruptcy Court's factual findings, finding them free of clear error.

Although Lynch does not challenge the Bankruptcy Court's legal analysis, the Court finds no error upon *de novo* review.  As the Bankruptcy Court properly noted, 11 U.S. Code § 522(b) "provides that a Debtor may claim exemption in property of the Estate, subject to the law of the jurisdiction in which the case is filed."  DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 49. New York CPLR § 5206(a), in turn, allows a Debtor "to exempt $150,000 . . . for property owned and occupied by the Debtor as a principal resident."  *Id*.  Under the "Snapshot Rule," courts look at the debtor's ownership and occupancy of the homestead as of the petition date.  *Id.*; *see In re Ward*, 595 B.R. 127, 138 (Bankr. E.D.N.Y. 2018).  As the Bankruptcy Court correctly noted, in order for the debtor to claim a homestead exemption in her principal residence under CPLR § 5206(a), "there must be actual, physical occupancy of the residence at issue on a regular basis, meaning that the residence is occupied by the Debtor on a more regular basis than any other residence, coupled with an intent to reside there permanently."  DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 49.  *See In re Rasmussen*, No. 09-72069-ast, 2010 WL 2889558, at *2 (Bankr. E.D.N.Y. July 20, 2010), *aff'd*, 456 B.R. 1 (E.D.N.Y. 2011).  The marital exception to the

occupancy requirement did not apply because a "final resolution was made by the State Court as to [Lynch's] rights to the Ninevah property prior to the bankruptcy petitioner date." DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 51; *see In re Issa*, 501 B.R. 223, 227 (Bankr. S.D.N.Y. 2013). Hence, the Bankruptcy Court concluded, "while there is no question that the Debtor was actually physically occupying Ninevah at the time of the bankruptcy petition, that occupancy was not under claim of right, but was in fact, determined by the State Court to be unlawful, as in violation of various orders of the State Court that clearly excluded the Debtor from occupying the Ninevah property." DE 919, 8-15-74795-ast, Tr. dated May 21, 2019 at 54. As such, the Bankruptcy Court correctly concluded that "[Lynch's] claim to a homestead exemption in Ninevah should be denied" because "she did not have a colorable right or claim to occupy Ninevah at [the petition date], but was, in fact, occupying Ninevah in contravention of State Court orders." *Id.* at 56-57.

*Conclusion*

For the foregoing reasons, Lynch's appeals in 19-cv-5673, 19-cv-5685, and 19-cv-5687 are dismissed for lack of jurisdiction, and her remaining appeals in 19-cv-3837 and 19-cv-3838 are DENIED and the Bankruptcy Court's underlying Orders are AFFIRMED. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to appellant at her address of record and close the cases.

**SO ORDERED.**

Dated: May 20, 2022
Central Islip, New York

   /s/ Gary R. Brown
HON. GARY R. BROWN
UNITED STATES DISTRICT JUDGE